

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00253-CR

RAMON PEREZ,

                                    **Appellant**

 **v.**

THE STATE OF TEXAS,

                                    **Appellee**

---

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2010-1418-C1

---

## MEMORANDUM  OPINION

---

A jury convicted Appellant Ramon Perez of three counts of aggravated sexual assault of a child and two counts of indecency with a child by contact.  The jury assessed Perez's punishment at life imprisonment for each count of aggravated sexual assault of a child and twenty years' imprisonment and a $10,000 fine for each count of indecency with a child by contact.  The trial court ordered that the sentences for each count of aggravated sexual assault of a child run consecutively.  This appeal ensued.

**Amendment of Indictment**

In his first through fifth issues, Perez contends that he was egregiously harmed because the jury charge constructively amended the original indictment. More specifically, Perez argues that the State's attempt to amend the original indictment was ineffective; therefore, the jury charge, which tracked the improperly amended indictment, allowed him to be convicted of different offenses than the offenses alleged in the original indictment, which the jury charge should have tracked.

The Texas Constitution guarantees to defendants the right to indictment by a grand jury for all felony offenses. TEX. CONST. art. I, § 10; *Riney v. State*, 28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000). "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX. CONST. art. V, § 12. Articles 28.10 and 28.11 of the Code of Criminal Procedure allow for the possibility of amending an indictment and supply the procedure to be followed for successful amendment. *Puente v. State*, 320 S.W.3d 352, 357 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. ANN. arts. 28.10, 28.11 (West 2006). The Court of Criminal Appeals conducted an analysis of Articles 28.10 and 28.11 in *Riney*. The *Riney* court quoted *Ward v. State*, 829 S.W.2d 787 (Tex. Crim. App. 1992), which stated, "Neither the [State's] motion [to amend] nor the trial judge's granting thereof is an amendment; rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Article 28.10." *Riney*, 28 S.W.3d at 565. But *Riney* then overruled *Ward* to the extent that it had required physical interlineation of the original indictment found in the clerk's file as the exclusive method of amendment. *Id.* at 566.

The *Riney* court explained an alternative method for amending an indictment:

> It is acceptable for the State to proffer, for the trial court's approval, its amended version of a photocopy of the original indictment. If approved, the amended photocopy of the original indictment need only be incorporated into the record under the direction of the court, pursuant to Article 28.11, with the knowledge and affirmative assent of the defense. This version of the indictment would then become the "official" indictment in the case, and it would continue to state, presumably in "plain and intelligible" language, the nature and cause of the accusation.

*Id.* at 565-66. And the Court of Criminal Appeals did not necessarily rule out the possibility that there could be *other* valid methods to amend an indictment. *Puente*, 320 S.W.3d at 358; *see Head v. State*, 299 S.W.3d 414, 436-38 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

In this case, the State filed a written motion the day before trial, asking the trial court to amend the indictment by replacing Counts I through XI of the original indictment with Counts I, II, III, IV and V in "Exhibit A," which was attached to the motion. Exhibit A contained the amended indictment language for Counts I, II, III, IV and V. The State's motion to amend the indictment also provided: "The Defendant, by and through his attorney of record, has been notified that the State is seeking amendment of the indictment, agrees to the amendment and waives ten (10) days notice to prepare for trial. The substantial rights of the defendant are not prejudiced by this amendment." The State's motion was also signed by Perez and his attorney as "Agreed."

The trial court held a hearing on the motion. At the outset, Perez's counsel stated, "[W]e have attached our signatures to the motion. Mr. Perez and I have signed

that we have no opposition to it." The State then explained that it wanted to amend the indictment because it was abandoning several counts from the original indictment and re-ordering the counts so that the first-degree felony counts were first, followed by the second-degree felony counts. The trial court asked Perez's counsel if he was familiar with the motion to amend and the substance of it, and he replied, "We certainly are, Your Honor, and, again, we have no objections to it. We know that they are -- these are, obviously, being substituted in for Counts I through V. We'll follow[] the new one." The trial court then asked Perez's counsel if Perez was waiving the time requirements. Perez's counsel replied that Perez was waiving the time requirements. Perez himself was then sworn, and he stated under oath that he was waiving the time requirements. The trial court then stated, "All right. The motion to amend the indictment is granted."

The following exchange then took place between the trial court, the prosecutor, and Perez's counsel:

> THE COURT: . . .
> Normally when we amend the indictment, it's usually just a case of interlineation and the Court writing on the indictment the changes. Since this is an entire page, how do you-all suggest we do that?
>
> [The State]: Judge, in my experience, that simply goes with the record and you don't have to actually copy and cut and paste, but we can certainly make a copy of it and paste it on top of the original indictment, if you want us to.
>
> THE COURT: I don't see any reason to do that.
>
> [Defense Counsel]: I don't either, Your Honor. I would think the document would speak for itself, what is in the file.
>
> [The State]: I think at the point we get to reading the indictment in front of the jury, we can just read the very beginning part and then just

flip back to the replacement page.

THE COURT:  I agree.

The record thus ultimately included the State's written motion containing the amended indictment language to which Perez and his attorney signed as "Agreed" followed immediately by a written order signed by the trial court granting the State's motion to amend the indictment and amending the indictment "as requested."  And, at the beginning of the trial, the State read the amended indictment into the record before the jury and Perez entered his plea of "not guilty" to the amended indictment without raising an objection.

Perez relates the State's attempt to amend the indictment in this case to the State's ineffective attempt to amend the indictment in *Hendricks v. State*, No. 06-11-00037-CR, 2011 WL 3612276 (Tex. App.—Texarkana Aug. 18, 2011, pet. ref'd) (mem. op., not designated for publication).  In *Hendricks*,

> [t]he State filed a written motion asking to amend the date of the alleged criminal act; defense counsel announced in open court that the defendant had no objection to the amendment; finally, the trial judge stated, "The indictment then is amended by agreement."  But no written document was filed in the record memorializing the trial court's ruling.

*Id.* at *2.  Based on these facts, the court stated:

> While there may be other ways to amend an indictment, our present law requires that the amendment be memorialized in a written document. *Head v. State*, 299 S.W.3d 414, 438 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (summarizing cases requiring written document).  Based on the record before us, Hendricks is correct:  the indictment was not amended. Therefore, the original indictment remained as the effective indictment.

*Id.*

But unlike in *Hendricks*, the record in this case includes the State's written motion containing the amended indictment language to which Perez and his attorney signed as "Agreed" followed immediately by the trial court's *written* order granting the State's motion to amend the indictment and amending the indictment "as requested." Based on these circumstances, we conclude that the indictment was effectively amended. *See Harrison v. State*, No. 05-07-00453-CR, 2008 WL 2514333, at *1 (Tex. App.—Dallas Jun. 25, 2008, no pet.) (not designated for publication) (concluding that trial court's order, affixed and incorporated into State's motion containing the amended language, sufficed to meet the objectives for amendment laid out in *Riney*). And because the indictment was effectively amended, the jury charge properly tracked the amended indictment instead of the original indictment. We overrule Perez's first through fifth issues.

## Ineffective Assistance of Counsel

In his sixth issue, Perez contends that his trial counsel rendered ineffective assistance by (1) repeatedly failing to object to expert and lay testimony that A.L., the child complainant, and his parents were telling the truth; (2) repeatedly failing to object to inadmissible prior consistent statements used to bolster A.L.'s testimony; (3) failing to object to the testimony of social worker Carol Kemp because her testimony did not come within the medical diagnosis and treatment exception to the hearsay rule; (4) failing to object to the testimony of Kemp and Dr. Lee Carter to the extent that their testimony constituted victim-impact evidence; and (5) failing to object when Dr. Sims was allowed to testify that her physical findings were consistent with sexual abuse, based on what A.L. told her, even though the actual physical findings showed A.L. to

be completely normal.

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Perez overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). To overcome the presumption of reasonably professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective

would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007).

Perez filed a motion for new trial in this case, but his complaints were only that his trial counsel rendered ineffective assistance by (1) preventing him from testifying when he asked to testify, and (2) failing to present exculpatory evidence on his behalf of which his counsel was aware. Perez never mentioned the complaints he now raises in this issue about his trial counsel rendering ineffective assistance because he failed to object to the introduction of various evidence. The record is thus silent as to trial counsel's reasons for not objecting to the introduction of such evidence. To conclude then that trial counsel was ineffective based on the asserted ground would call for speculation, which we will not do. *See Jackson*, 877 S.W.2d at 771; *Gamble*, 916 S.W.2d at 93. Thus, we must conclude that Perez has not overcome the presumption that counsel's decision was reasonably professional and motivated by sound trial strategy. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Gamble*, 916 S.W.2d at 93. We overrule Perez's sixth issue.

**Cumulative Error**

In his seventh issue, Perez contends that his right to due process and due course of law was violated because of the cumulative error that resulted from his being convicted of five offenses for which he was not charged in the original indictment as described in his first five issues and from his trial counsel's rendering ineffective assistance as described in his sixth issue. We disagree. The Court of Criminal Appeals has stated, "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But the *Chamberlain* court continued that non-errors may not in their cumulative effect cause error. *Id.* In our analysis of Perez's first six issues, we did not conclude that there was error; therefore, we cannot conclude that Perez was harmed by the cumulative effect of a number of errors. We overrule Perez's seventh issue.

**Motion for New Trial Hearing**

In his eighth issue, Perez contends that the trial court abused its discretion in failing to conduct a hearing on his motion for new trial complaining of ineffective assistance of counsel.

To preserve a complaint for appellate review, the complaining party must have obtained a ruling on any request, motion, or objection. TEX. R. APP. P. 33.1(a)(2). Where a motion for new trial is overruled by operation of law, the trial court's failure to conduct a hearing, without more, is simply a "failure to rule" on the request for a hearing. *Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd).

Perez's motion for new trial includes a request for a hearing in the prayer for

relief. And the record contains the affidavit of Perez's appellate counsel, in which he states, "Yesterday, August 3, 2011, I presented this Motion for New Trial to the Honorable Ralph Strother, the 19th District Court Judge who presided over Mr. Perez'[s] trial. Judge Strother stated that he would take a look at the Motion for New Trial." But there is no indication that Perez ever specifically brought to the trial court's attention his desire for a hearing or that Perez ever attempted to schedule a hearing. Moreover, there is no indication in this record that the trial court ever refused to conduct a hearing on Perez's motion for new trial, and Perez's motion for new trial was overruled by operation of law. In short, the record contains no indication that the trial court either explicitly or implicitly ruled on Perez's request for a hearing.

Having failed to obtain a ruling on his request for a hearing—or at least a written order overruling his motion for new trial—and having failed to object to the lack of a ruling, Perez has not preserved his complaint for review. *See id.* (holding appellant did not preserve complaint when he failed to either obtain a ruling on his request for a hearing or obtain an order overruling his motion for new trial); *see also Shelvin v. State*, No. 01-99-00022-CR, 1999 WL 959365, at *3 (Tex. App.—Houston [1st Dist.] Oct. 21, 1999, no pet.) (not designated for publication) (same). We overrule Perez's eighth issue.

### Orders to Withdraw Funds from Inmate Account

In his ninth issue, Perez contends that the evidence is insufficient to support the five separate orders for funds to be withdrawn from his inmate account. The State concedes error, and we agree.

The trial court signed five judgments, and incorporated into each of the

judgments is an order to withdraw funds from Perez's inmate account in the amount of $10,657.25, payable to the McLennan County District Clerk. The record and evidence, however, do not support the amounts in these five orders.

For Count I, Perez was not assessed a fine, but he was required to pay court costs of $657.25. The amount of the court costs is supported by the district clerk's bill of cost. Therefore, the order to withdraw funds incorporated into the judgment on Count I should be modified to the amount of $657.25.

For Counts II and III, Perez was not assessed a fine, and the court costs were already assessed for Count I; therefore, the orders to withdraw funds incorporated into the judgments for Counts II and III should be vacated.

For Count IV, Perez was assessed a fine of $10,000, and the court costs were already assessed for Count I; therefore, the order to withdraw funds incorporated into the judgment on Count IV should be modified to the amount of $10,000. Likewise, for Count V, Perez was assessed a fine of $10,000, and the court costs were already assessed for Count I; therefore, the order to withdraw funds incorporated into the judgment on Count V should be modified to the amount of $10,000.

We sustain Perez's ninth issue.

## Conclusion

We reverse in part the trial court's judgments to the extent that they each include an order to withdraw funds for $10,657.25. We remand this case to the trial court to reform the judgments as set forth above. We affirm the remaining portions of the trial court's judgments.

REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed in part, reversed and remanded in part
Opinion delivered and filed July 18, 2013
Do not publish
[CRPM]